HUBBART et al. v. WILLIS STATE BANK et al.

(Court of Civil Appeals of Texas. El Paso. Dec. 19, 1912.)

1. EXECUTION (§§ 9, 171*)—ORDER OF SALE— TIME OF ENTRY.

The issuance of an order of sale on execution prior to the valid entry of the judgment was unauthorized, and an injunction would issue against a sale of the property.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 21–24, 497–518; Dec. Dig. §§ 9, 171.*]

2. EXECUTION (§ 9*) — SALE — CONDITIONS PRECEDENT—ENTRY OF JUDGMENT.

An entry nunc pro tunc of a judgment theretofore rendered related back to the original rendition, and cured the irregularity of issuing an order of sale after rendition, but before entry of judgment; it being the rendition, and not the mere entry of judgment, which supports an execution or order of sale.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 21–24; Dec. Dig. § 9.*]

Appeal from District Court, Montgomery County; L. B. Hightower, Judge.

Action by Joseph Hubbart and others against the Willis State Bank and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Jno. C. Williams, of Houston, for appellants. S. A. McCall, of Willis, and Llewellyn & Foster, of Conroe, for appellees.

HIGGINS, J. At the January term of the district court of Montgomery county in cause No. 4,490 a judgment by default was rendered in favor of the Willis State Bank against Joseph Hubbart and his wife for the sum of $683.41, with interest thereon at the rate of 10 per cent. per annum, together with foreclosure of mortgage lien upon certain personal property. This judgment was not entered upon the minutes during the term, but after the minutes had been signed by the judge, and after the court had adjourned. On February 24, 1909, an order of sale was issued thereon and levied upon personal property described therein, and the same advertised for sale on March 13, 1909. Thereupon this suit was instituted by appellants, praying that sale of said property be enjoined, and upon presentation of the petition to the district judge a temporary writ of injunction was issued, but on March 25, 1909, the same was dissolved, and the property was again advertised to be sold on April 7, 1909. Thereupon Hubbart and wife appealed from the order dissolving said injunction to the Court of Civil Appeals for the First Supreme judicial district at Galveston, which court forthwith issued its writ of injunction, restraining the proposed sale which was to be made on said April 7, 1909, and thereafter entered its order setting aside the judgment of the district court dissolving the temporary writ, and reinstating the same as it was originally granted. The opinion of the Galveston court was rendered by Judge Reese, and the case is reported in 55 Tex. Civ. App. 504, 119 S. W. 711. The original order of sale was returned on April 24, 1909, the sheriff in his return stating that the property was advertised for sale on March 13, 1909, which sale was enjoined by the writ of injunction issued by the district court, and, this writ being dissolved, he again advertised the same for sale on April 7, 1909, but was enjoined from so doing by writ of injunction issued by the Galveston Court of Civil Appeals. On April 24, 1909, the clerk

of the district court issued a writ of venditioni exponas, directing the sale of the property levied upon under the original order of sale. This writ of venditioni exponas was returned July 12, 1909; the sheriff in his return stating that he had not executed the same because the writ of injunction issued by the Galveston court restrained him from so doing. On August 30, 1909, an alias writ of venditioni exponas was issued, directing the sale of the property levied upon under the original order of sale, which was returned by the sheriff on September 14, 1909, the return showing that the personal property described in the original order of sale had been sold thereunder on September 11, 1909. On July 14, 1909, during the July term of the district court of Montgomery county, judgment nunc pro tunc was entered in cause No. 4,490 as of date January 12, 1909; the judgment reciting that a judgment was duly rendered in said cause in favor of the bank and against the defendants Hubbart and wife, and that judgment should have been so entered at the January term, but the same had not been entered, wherefore judgment was then entered as of date January 12, 1909. It was provided therein that same should relate and refer back to January 12, 1909. The property having been sold on September 11, 1909, plaintiffs thereafter amended their petition herein, alleging a conversion of the property so sold, and praying judgment for its value and damages for its detention, which coming on for trial judgment was rendered in favor of the defendants Willis State Bank, M. A. Anderson, sheriff of Montgomery county, and Owen A. Smith, G. B. Robinson, and S. A. McCall, these last three named defendants being sureties on the indemnity bond given by the bank to the sheriff to indemnify him against any loss arising out of the seizure and sale of the personal property described in the original order of sale. From this judgment, this appeal is prosecuted.

From the statement which we have made, it will be noted that the writ of venditioni exponas, under which the property was sold, was based upon the original order of sale which was issued February 24, 1909, and appellants contend that, the Galveston Court of Civil Appeals upon the former appeal of this case having held such order of sale to be unauthorized and void, it therefore would not support the venditioni exponas, and the sale of such property thereunder was likewise unauthorized and void.

[1] It must be admitted there are expressions in the opinion of Judge Reese upon the former appeal from which it might be inferred that the court held the issuance of the order of sale absolutely void. We fully concur in the views there expressed that the issuance of the order of sale prior to the valid entry of the judgment was unauthorized and an injunction properly issued to restrain the sale of the property levied upon thereunder, but such a holding does not necessarily imply that the order of sale was absolutely void. We have examined the three Texas cases cited by Judge Reese, and find nothing in them to support the view that such an order of sale should be so regarded. In Cyrus v. Hicks, 20 Tex. 487, it was simply held that an injunction properly issued to restrain the collection of an execution issued on a judgment the record of which had been destroyed and which had not been properly re-entered of record. There is nothing in the opinion to indicate that the execution was regarded as absolutely void. In Brown v. Reese, 67 Tex. 319, 3 S. W. 292, it was held that a mandamus would not lie to compel the issuance of a school warrant upon which there was an indorsement by the county judge of its approval by the court, but which approval had not been entered of record upon the minutes of the court; that mandamus would not lie to compel the issuance of a warrant in payment of the claim until an order of its approval had been entered upon the minutes of the court charged with the duty of auditing it. And in support of this position the court used the following language: "Can the clerk of a court be forced to issue execution upon a judgment properly rendered, but not entered upon the minutes, although it may fully appear by the entry upon the judge's docket? Clearly not. Can he be compelled to issue upon a judgment the record of which has been destroyed? On the contrary, it is held that an execution in such case may be enjoined. Cyrus v. Hicks, 20 Tex. 483." The quotation from the court's opinion shows upon its face that there is nothing therein to indicate that if the clerk in fact issued an execution upon a judgment properly rendered, but not entered upon the minutes, it would be regarded as absolutely void. Brown v. Ruse, 69 Tex. 589, 7 S. W. 489, has no bearing whatever upon the question here considered. There is a very wide distinction between acts and instruments which are void and those which are voidable only, but a voidable act is frequently referred to as being void. Our reports abound with instances of such inaccurate use of the term, and we do not think it the purpose of the Galveston court upon the former appeal to have held that the order of sale issued in cause No. 4,490 was absolutely void; but rather that its issuance was unauthorized at the time it was issued, and was such an irregularity as warranted and demanded the issuance of a writ of injunction to restrain its enforcement.

[2] Subsequent to the rendition of the opinion by the Galveston court, and on July 14, 1909, the judgment nunc pro tunc was entered, and we think the effect of this entry was to relate back and vitalize the original judgment as of the date of its original rendition, and to have cured the irregularity in the issuance of the original order of sale. We find this view supported by over-

whelming authority. In the first place, articles 3715 and 3717 authorize the issuance of executions at the expiration of twenty days after the rendition of judgment, and provide, if no execution is issued within 12 months after rendition of the judgment, the judgment should become dormant. It will thus be noted that the time within which the execution may issue is regulated by the date of the rendition of the judgment, and not of its entry upon the minutes. We do not regard these provisions of the statute as controlling upon the question by any means, but refer to the same merely as illustrative of the view which we have that it is the rendition of the judgment itself which supports an execution or an order of sale, rather than the formal entry upon the minutes; that the entry upon the minutes is merely the evidence demanded by law of the fact that the judgment was rendered, and is not of itself the basis of the execution. As stated above, we concur fully in the view that, until this evidence of the rendition of the judgment has been supplied by the formal entry thereof in the minutes of the court, the clerk is not authorized to issue an execution upon the judgment, and, if he does do so, the same is such an irregularity as would authorize and demand the issuance of an injunction to restrain its enforcement. But in the light of the authorities which we now review we think the subsequent entry of the judgment nunc pro tunc will cure the irregularity.

Mr. Freeman, in his Work on Executions (volume 1, par. 24 [2d Ed.]) says: "If a writ so issued (referring to a writ of execution issued before formal entry of the judgment) were assailed and sought to be vacated, or otherwise avoided, it would generally be rescued from peril by a nunc pro tunc entry of the judgment upon which it was based." 1 Black on Judgments, § 136, quotes with approval from Ludlow v. Johnston, 3 Ohio, 553, 17 Am. Dec. 609, as follows: "There can be no doubt that such an entry may operate so as to save proceedings which have been had before it is made. For instance, a judgment is actually made at one term, but through mistake or negligence is not entered of record. Subsequent to the term the plaintiff, under the impression that the business had all been correctly transacted, prays out execution. The property of the judgment debtor is levied upon and sold to a bona fide purchaser, who parts with his money in good faith. In such case the court may with propriety enter a judgment, to be considered of the term in which it was actually rendered and should have been entered. Such proceedings should be for the furtherance of justice. It would do no injury to the parties concerned, and would secure the rights of an innocent purchaser." 17 Cyc. § 136, says: "The irregularity of issuing execution before entry of judgment, or before the filing of the judgment roll, may generally be cured by subsequent entry of the judgment, or filing of the roll." The case of Doughty v. Meek, 105 Iowa, 16, 74 N. W. 744, 67 Am. St. Rep. 282, is directly in point, and in that case it was said: "At the time the execution issued there was no formal entry of judgment, and it is argued that the nunc pro tunc entry did not validate the execution. It is well settled that 'there can be no judgment until it is entered in the proper record of the court. It cannot exist in the memory of the officers of the court, nor in memoranda entered upon books not intended to preserve the record of judgments.' Winter v. Coulthard, 94 Iowa, 312, 62 N. W. 732; Balm v. Nunn, 63 Iowa, 642, 19 N. W. 810; Case v. Plato, 54 Iowa, 64, 6 N. W. 128. In one of these cases it is said that, 'there being no valid existing judgment when the execution issued, it is void.' This declaration had no reference, however, to the effect that should be given a nunc pro tunc entry, and it is not to be regarded as conclusive of the point now under consideration. Mr. Freeman, in his work on Judgments, at section 67, says: 'With the exception pointed out in the previous section (relating to the rights of third persons), a judgment entered nunc pro tunc must be everywhere received and enforced in the same manner and to the same extent as though entered at the proper time. * * * Though an execution may have issued, * * * when there was nothing on the record to support it, yet the omission is one of evidence, and not of fact; and, the evidence being supplied in a proper manner, full force and effect will be given to the fact, as if the evidence had existed from the beginning.' Mr. Black, in his treatise on Judgments, at section 136, announces practically the same doctrine. These statements are authorized by the following, among other, authorities: Bush v. Bush, 46 Ind. 70; Tapley v. Goodsell, 122 Mass. 176; Parker v. Rugg, 9 Gray [Mass.] 209; Graham v. Lynn, 4 B. Mon. [Ky.] 17, 39 Am. Dec. 493. Following this almost unbroken line of decisions, we are constrained to hold that the nunc pro tunc entry so operated as to save the execution which had theretofore been issued."

In Graham v. Lynn, 4 B. Mon. (Ky.) 17, 39 Am. Dec. 493, it was held that an execution issued upon a judgment actually rendered, but not at the time fully and regularly entered, is not void, but voidable only, and may be completely validated by afterwards making a proper entry of the judgment on the record nunc pro tunc, and that such an entry would support and validate an execution issued prior to the nunc pro tunc entry. In this case it was said: "The order of the 10th of December, 1840, made in the case of Graham, etc., v. Switzer, as it now stands on the record of that case, and as it was read in evidence in this case, shows that, as appeared by the record, a judgment was pronounced in court in favor of Graham v. Switzer, on the 6th of September, which by the mistake of the clerk was not then entered at

large on the order book, but was on the 10th of December entered nunc pro tunc. The court, by the instructions given to the jury, decided that, notwithstanding this order, an execution issued on the 17th of September, and returnable in November, purporting to be founded on a judgment between the same parties for the same debt, was void, as were the acts of the officer under it, and that the return of the sheriff thereon, importing that the defendant had no property, was not such evidence of diligence as would entitle the plaintiffs, who were suing the present defendant, as assignee of the debt, to a verdict. Waiving the question whether the return of the sheriff, who acted under the execution as a valid precept should not be regarded as being entitled to full weight as evidence of the facts therein stated, though it should afterwards be discovered that there was no valid judgment, we are of opinion that the court did not give proper effect to the order entering the judgment nunc pro tunc. The object and effect of such an order is to furnish proper evidence of acts properly done by the court, but not properly exhibited by its record, and such evidence is furnished nunc pro tunc, for the very purpose of supporting those acts which, though the proper consequences of a judgment, would seem to be irregular and void, because there is no proper evidence of the judgment. If the judgment be in fact rendered by the court, but not at the time regularly and fully entered, a fieri facias issued in pursuance of the judgment is not void, but voidable only, and capable of complete validation by afterwards making a proper entry of the judgment on the record, showing when it was in fact rendered, and entering it now for then. In the English courts a judgment is often rendered nunc pro tunc, as of the time when it appears from the record that the plaintiff might and ought to have had judgment, though none was in fact rendered at that time (Tidd's Pr. 965, 972) 'that the delay arising from the act of the court may not turn to the prejudice of the party,' as when a party dies after a special verdict during the time taken for argument or for consideration, or on a motion in arrest of judgment, or for a new trial. The court will, however, provide that other persons shall not be injured, and there 'when leave was given to enter up judgment, as of a preceding term, nunc pro tunc, the court of king's bench, in order that it might not affect intermediary purchasers and mortgagees, ordered it to be docketed of the term in which the application was made.' Baker v. Baker, referred to in Tidd's Practice, 972. But application must be made in reasonable time, etc. It thus appears, as indeed is implied in the terms nunc pro tunc, that a judgment rendered nunc pro tunc might have a retrospective operation, even to the injury of strangers, unless it were expressly guarded against. With much more reason may the mere entry on the order book, nunc pro tunc, of a judgment to which the plaintiff was not only entitled at a previous day, but which was then actually rendered, have a retrospective operation so as to support intermediary proceedings conformable with the judgment already rendered, and when the interest of no other party has been injuriously affected by the omission to enter it when it was in fact pronounced. Although, therefore, the writ of fieri facias in this case might have been quashed on motion, so long as no judgment appeared on the order book, yet the judgment might, if there were sufficient grounds for it, have been put there nunc pro tunc even during the pendency of the motion, with the effect of removing the ground of quashal, and making good the writ and the acts done under it. And so, if the entry nunc pro tunc were made on sufficient ground during the pendency of this trial, such entry read as part of the record of the case in which it was made would have removed all objections to the validity of the execution, and the verity of the officer's return thereon, so far as such objections were founded upon the mere fact that there was no judgment on the order book during the life of the execution."

In the case of Burns v. Skelton, 29 Tex. Civ. App. 453, 68 S. W. 527, a judgment was rendered in the justice court on July 24, 1891, but of which no entry was made until August 31, 1901, when it was entered nunc pro tunc as of the date it was originally rendered. Upon the entry of the nunc pro tunc judgment, application was made for the issuance of an execution, which was refused, because no execution had been issued within one year after the rendition of the judgment as by law required. Application to the district court for a mandamus to compel the issuance of the execution was refused. Upon appeal applicant contended that the judgment was not in force and operative until August 31, 1901, when it was entered on the justice court docket, and that until that date no execution could have been issued. The court in an opinion by Judge Neill overruled this contention, and held that execution could have been issued upon the judgment within the time prescribed by law, although no formal entry thereof had been made upon the justice court docket, basing its judgment upon article 1661 of the Revised Statutes of 1895, relating to executions in justice's courts, which provides for the issuance of execution on the eleventh day after the rendition of the judgment. This decision seems to be in conflict, to some extent, with Cyrus v. Hicks, supra, but we regard it as illustrative of the view which we have, that the rendition of the judgment is the basis of an execution, and that its formal entry merely supplies the evidentiary fact which authorizes the clerk to issue the execution, and that the entry of a judgment nunc pro tunc will relate back to the date of a judgment theretofore rendered, but not entered of record, and validate and cure the ir-

regularity of an execution issued prior to the formal entry. Upon the question here under consideration, see, also, Hastings v. Cunningham, 39 Cal. 137; Bush v. Bush, 46 Ind. 70; Tapley v. Goodsell, 122 Mass. 176; Parker v. Rugg, 9 Gray (Mass.) 209.

In the light of the authorities cited and discussed, we are of the opinion that the nunc pro tunc entry of judgment on July 14, 1909, related back to January 12, 1909, upon which date judgment was actually rendered in the cause, and that the same became effective as of date January 12, 1909, and validated the irregularity of the issuance of the order of sale issued February 24, 1909, and that the sale of the property made on September 11, 1909, under the venditioni exponas based upon the original order of sale, was valid and authorized, and that the court therefore properly rendered judgment against the appellants.

Affirmed.